UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LOUIS SERRANO,

        Plaintiff,

  -against-

THE CITY OF NEW YORK, AWILDA MARINO,
and PABLO TAVERAS, each in their individual
capacities,

        Defendants.

Demand for Jury Trial
-----------------------------------------------------------------X

**FIRST AMENDED COMPLAINT**

13cv6105

Plaintiff Louis Serrano, by and through his attorneys LeBow & Associates, PLLC, complains of the Defendants, and each of them, as follows:

## PRELIMINARY STATEMENT

Plaintiff Louis Serrano brings this action under 42 USC §§1983 and 1988 to redress Defendants' violations of his Constitutional rights. Defendant New York City Police Department officers Marino and Taveras, who were acting under the color of state law violated plaintiff's Fourth Amendment rights by using excessive force against him, in arresting Plaintiff, and in the course of doing so, inflicted serious bodily harm upon him. Specifically, on or about May 17, 2012, Marino and Taveras stopped Plaintiff and placed him under arrest for a minor traffic violation for traveling the wrong way on a one-way street. During the course of arresting Plaintiff both officers Marino and Taveras used excessive force against Plaintiff, who was not resisting arrest or posing any threat to the officers or anyone else on the scene, by spraying him in the face with Mace and striking him about the body, head and shoulders with a telescoping titanium rod known as an ASP, causing

plaintiff to sustain serious bodily injury. Plaintiff therefore asserts causes of action against both Marino and Taveras for excessive force.

Plaintiff also asserts a cause of action against the City of New York based upon entity liability, and allege that the City of New York maintained certain policies, customs, and practices regarding the hiring, training, supervision, and disciplining of police officers that demonstrated a deliberate indifference towards the constitutional rights of Plaintiff and others, and that directly and proximately caused the violations of Plaintiff's Fourth Amendment rights complained of herein.

Plaintiff seeks compensatory and punitive damages from Defendants Marino and Taveras, and compensatory damages from Defendant City of New York.

## II. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over the civil rights claims asserted herein against Defendants Marino, Does, and the City of New York pursuant to 28 U.S.C. §§1331 and 1343(a)(3). Venue in this district is proper because a substantial part of the events giving rise to the claims described herein occurred in the Southern District of New York.

## III. PARTIES

2. At all times relevant herein, Plaintiff Louis Serrano was a resident of 364 Huntington Avenue, 2nd Floor, Bronx, NY 10465, and a citizen of the United States.

3. At all times relevant herein, Defendant Awilda Marino was a police officer employed by the New York City Police Department ("NYPD") and assigned to the 25th Precinct in the East Harlem neighborhood of Manhattan.

4. At all times relevant herein, Defendant Pablo Taveras was a police officer employed by the NYPD and assigned to the 25th precinct in the East Harlem neighborhood of Manhattan.

5. At all times relevant herein, the City of New York was a municipal corporation existing under the laws of the State of New York.  As such, it maintains a police department, and has enacted rules, regulations, and policies as well as maintaining customs and practices concerning the hiring, termination, training, discipline, and conduct of the officers it employs.

## IV. STATEMENT OF FACTS

6. At all times relevant herein, Plaintiff Louis Serrano was a citizen of the United States and a resident of Bronx, NY.

7. At all times relevant herein, Defendant Awilda Marino was an NYPD officer assigned to the 25th Precinct.

8. At all times relevant herein, Defendant Pablo Taveras was an NYPD officer assigned to the 25th Precinct.

9. On or around 5:45 PM, on or about May 17, 2012, Plaintiff was driving his truck around 5th Avenue and 120th Street in the East Harlem neighborhood of New York, NY.

10. On or around that time, Marino and Taveras were driving the police motor vehicle assigned them around the same location.

11. Plaintiff, confused by ongoing construction, accidentally drove the wrong way down a one-way street, and tried to make a U-turn.

12. Before Plaintiff could finish his U-turn, Marino pulled Plaintiff over for making a wrong turn down a one-way street.

13. Plaintiff, upon being stopped by Marino and Taveras, asked Marino to forgive his mistake because he had been confused by the ongoing construction in the area.

14. Notwithstanding and unprovoked, Taveras then flung Plaintiff's door open, pulled him out of his truck, and attempted to push him to the ground.

15. At the same time, Marino sprayed mace in plaintiff's face.

16. Thereafter, both Marino and Taveras continued to assault Plaintiff with punches and an NYPD issued telescopically expanding wand, referred to as an " ASP".

17. Tavares hit plaintiff multiple times in the knees, shoulders and face with his "ASP".

18. As a result of Taveras striking plaintiff above the shoulders with his "ASP", Taveras knocked out eight of Plaintiff's teeth, caused Plaintiff's lip to sustain a through by through laceration that required stitches, and further caused Plaintiff to incur an injury to his shoulder that required numerous trigger point injections, and otherwise cause Plaintiff to sustain other cuts and bruises all over his body.

19. At no time did plaintiff attempt to resist the lawful commands or directions of Marino or Taveras. However, during the beating he received from Marino and Taveras Plaintiff attempted to flail his arms to avoid being beaten any further, and after being sprayed in the face with Mace by Marino Plaintiff did attempt to flee any further applications of Mace, and during such an attempt to gain his breath Plaintiff did accidentally strike officer Marino in the face with an open hand.

20. Plaintiff was arrested, and based on sworn statements provided by Marino and Taveras, was charged with assault and resisting arrest, both misdemeanor offenses.

21. Plaintiff pled guilty to resisting arrest the assault charge was dismissed and he was sentenced to time served.

## V. FIRST CAUSE OF ACTION -
### Use of Excessive Force

22. Plaintiff repeats, reiterates, and reaffirms each and every allegation contained in paragraphs 1 through 21 of this Complaint with the same force and effect as though fully set forth herein.

23. As a result of the actions of Marino and Taveras, which began on or about May 17, 2012, Plaintiff was deprived of his rights under the United States Constitution and federal civil rights law. Plaintiff's rights are secured by the Fourth Amendment and 42 U.S.C. §1983.

24. The actions of Marino and Taveras were committed under the color of law and were intentional and willful.

25. That at all times mentioned herein, Defendants Marino and Taveras acted without privilege or authorization of law, and with the specific intent to deprive Plaintiff of his rights under the United States Constitution and federal civil rights law.

26. That at all times mentioned herein, Defendants Marino and Taveras either knew or should have known that they were violating Plaintiff's rights under the United States Constitution and federal civil rights law.

27. On or about May 17, 2012, Taveras flung the door of Plaintiff's truck open, pulled Plaintiff out of his truck, and attempted to push him to the ground, all the while assaulting Plaintiff with punches and his "ASP" while Marino sprayed Plaintiff in the face with Mace.

28. On information and belief, Plaintiff attempted to flail his arms to stop the beating, but did not resist his arrest or strike or attempt to strike at the officers, nor did he take actions that a reasonable officer could perceive as providing resistance to arrest or as attempting to strike at the officers.

29. On information and belief, Taveras attempted to push Plaintiff to the ground while repeatedly assaulting Plaintiff with punches and his "ASP" while Marino sprayed Plaintiff with Mace, despite the fact that Plaintiff was attempting, to the best of his abilities under the facts and circumstances, to comply with the officers' commands, and was not actively resisting or attempting to strike the officers, but merely attempting to avoid suffocation from the Mace and further bodily injuries being inflicted upon him by Taveras' wild swings with his "ASP."

30. On information and belief, Marino and Taveras knocked out eight of Plaintiff's teeth, cut his lip, through and through, so badly that he required stitches, and caused him to incur soft tissue injuries and bruises all over his body.

31. That a reasonable officer in the position of Marino and Taveras would have no reason to believe that Plaintiff was committing, or was in the course of committing, a violent felony offense, based on the information available to them at the time they used force against Plaintiff.

32. A reasonable officer in the position of Marino and Taveras would have no reason to believe that Plaintiff posed a threat of serious bodily injury to either of them or to anyone else in the area, or was resisting arrest or actively attempting to evade arrest by flight, based on the information available to them at the time they used force against Plaintiff.

33. A reasonable officer in the position of Marino and Taveras would not have employed the same degree of force against Plaintiff as did Marino and Taveras, in light of (A) the severity of any crimes that Marino and Does #1-3 could reasonably have perceived that Plaintiff had committed or was in the course of committing, based on the information then available to them; (B) the fact that a reasonable officer could not have perceived that Plaintiff posed an immediate threat to the safety of Marino, Taveras, or anyone else on the scene; and (C) the fact that Plaintiff was not actively resisting arrest or attempting to evade arrest by flight, nor could a reasonable officer perceive Plaintiff's actions as doing so.

34. The degree of force that Marino and Taveras used against Plaintiff was objectively unreasonable and excessive, and violated Plaintiff's Fourth Amendment rights.

35. That police officers Marino and Taveras knew or should have known that the nature and degree of force used upon Plaintiff was unreasonable, excessive, and in clear violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution and federal civil rights law.

36. That the actions of Marino and Taveras therefore amounted to excessive force under 42 U.S.C. §1983.

37. As a direct and proximate result of Marino and Taveras use of excessive force against Plaintiff, eight of Plaintiff's teeth were knocked out, his lip was cut, through and through, so badly that he required stitches, and he incurred soft tissue injuries and bruises to Plaintiff's shoulders, knees and torso.

### VI. SECOND CAUSE OF ACTION-
### ENTITY LIABILITY
### (Against Defendant City of New York)

38. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 37 of this Complaint with the same force and effect as though fully set forth herein.

39. On information and belief, the failure of responsible officials of the City of New York to maintain appropriate customs, policies, and practices regarding the supervision and/or training of NYPD officers led to Defendants' deprivation of Plaintiff's rights under the United States Constitution.

40. Responsible officials of Defendant City of New York knew or should have known that if they failed to supervise or train officers of the NYPD effectively so as to instruct them as to the proper degree of force to use against people being arrested, and to deter them from using excessive force, the obvious consequence would be that some officers would nonetheless use force in excess of what is legally permissible and violate the constitutional rights of individuals, for reasons such as to remove any chance that a suspect will fail to comply with the officer's orders, to induce a suspect into confessing or divulging the name of an associate, or to retaliate against a suspect who the officer believes has disrespected him/her or caused him/her offense.

41. Responsible officials of Defendant City of New York knew that when NYPD officers confront situations in which there were powerful incentives to use excessive force against people being arrested, if those officers were properly supervised and disciplined, they would almost always be deterred from using excessive force due to the understanding that they would be held liable if they do so, and if those officers were properly trained, they would be fully aware of (A) the proper degree of force that is permitted to be used in a given situation, (B) their responsibilities under the law to not exceed the degree of force that is legally permissible in a given situation, and (C) the consequences they would face for using excessive force.

42. Responsible officials of Defendant City of New York knew that the consequences of the use of excessive force by NYPD officers against individuals being arrested would be the deprivation of the Fourth Amendment rights of those individuals.

43. Responsible officials had a duty to supervise and train officers of the NYPD effectively, and said officials' failure to do so represent a deliberate indifference to the constitutional rights of Plaintiff and other individuals who were victims of excessive force during their arrests.

44. The failure of responsible officials of Defendant City of New York to respond in a timely and effective fashion to properly supervise and/or discipline Defendants so as to prevent them from violating the constitutional rights of individuals by using excessive force against people being arrested signifies a policy or custom of inaction by those officials, representing a further deliberate indifference to the constitutional rights of Plaintiff.

45. As a direct and proximate result of the aforementioned acts of responsible officials of Defendant City of New York, eight of Plaintiff's teeth were knocked out, his lip was cut so badly that he required stitches, and he incurred bruises all over his body.

46. As a result of the foregoing, Plaintiff sustained the damages previously described, and seeks compensatory damages from the City of New York.

**WHEREFORE** Plaintiff demands judgment against Marino and Taveras in the amount of One Million Dollars ($1,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000) in punitive damages on the First Cause of Action, and against the City of New York in the amount of One Million Dollars ($1,000,000.00) in compensatory damages on the Second Cause of Action, together with attorneys' fees, and the costs and disbursements associated with bringing this action.

Dated: New York, New York  
      July 17, 2014

Respectfully submitted,  
LEBOW & ASSOCIATES, PLLC

/s/ James B. LeBow  
_____  
James B. LeBow, Esq. (JL4535)  
570 Lexington Avenue, 16th Floor  
New York, New York 10022  
Tel. (212) 868-3311  
Fax (646) 619-4555